UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A.P.C.,<br><br>       Petitioner,<br><br>   -v.-<br><br>KENNETH GENALO, *in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement*; PAUL ARTETA, *in his official capacity as Warden of the Orange County Correctional Facility*; DAVID J. VENTURELLA, *in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigrations and Customs Enforcement*; MARKWAYNE MULLIN *in his official capacity as Secretary of Homeland Security*; and TODD BLANCHE, *in his official capacity as Acting Attorney General*,<br><br>       Respondents. | 26 Civ. 5827 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

On July 9, 2026, Petitioner A.P.C. filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  (Dkt. #1 ("Petition")).  That same day, the Court entered an Immediate Order setting an expedited briefing schedule.  (Dkt. #4 ("Immediate Order")).  Respondents (the "Government" or "Immigrations and Customs Enforcement ('ICE')") opposed the Petition on July 13, 2026 (Dkt. #9 ("Gov't Opp.")), and Petitioner replied on July 22, 2026 (Dkt. #11 ("Pet. Reply")).  On July 28, 2026, the Court held a hearing on the Petition.  (July 28, 2026 Minute Entry).  On August 7 and 10, 2026, at the Court's invitation, the parties filed supplemental submissions.  The

Government submitted a letter (Dkt. #12) and the declaration of ICE Supervisory Detention and Deportation Officer Ariel Valdez (Dkt. #12-1 ("Valdez Decl.")).  Petitioner also submitted a letter and attachment.  (Dkt. #15).  Now, having reviewed the parties' various submissions in this case, the Court grants Petitioner a burden-shifted bond hearing but not immediate release.

Petitioner is a citizen of El Salvador who has lived in the United States since August 2016.  (Petition ¶ 1).  On April 13, 2026, ICE arrested Petitioner, and he has been detained at the Orange County Correctional Facility in Goshen, New York since.  (*Id.*).  The Government's proffered reason for Petitioner's arrest and detention is that he is an MS-13 gang member and international fugitive wanted in El Salvador for homicide and narcotics trafficking.  (Gov't Opp. 2-3 (citing, *inter alia*, Dkt. #9-5 (Interpol Red Notice); Dkt. #9-6 (Foreign Arrest Warrant); Valdez Decl. ¶ 6)).  At the time of his arrest, the Government detained Petitioner under 8 U.S.C. § 1225(b)(2)(A), but following the Second Circuit's decision in *Barbosa da Cunha* v. *Freden*, 175 F.4th 61 (2d Cir. 2026) (holding that 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), "governs detention of noncitizens … who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter"), the Government reversed course and began asserting that it "is now detaining Petitioner under [Section] 1226(a)," (Gov't Opp. 2; *see also* Valdez Decl. ¶¶ 16-19 (describing ICE's shifting justification after *da Cunha*'s issuance)).

2

Petitioner seeks various forms of relief.  (Petition 28 (prayer for relief)). He asks the Court to (i) assume jurisdiction; (ii) immediately enjoin the Government from transferring him outside the jurisdiction of this Court or removing him from the United States pending the resolution of this case; (iii) declare that his arrest and detention violate the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act, the Fourth Amendment, and the Administrative Procedure Act; (iv) issue a writ of habeas corpus requiring that the Government release him immediately, or, in the alternative, order a burden-shifted bond hearing within fourteen days and enjoin the Government from invoking the automatic stay provision under 8 C.F.R. § 1003.19(i)(2); and (v) award him attorneys' fees and costs.  (*Id.*).  The Court's Immediate Order already granted Petitioner's first and second requests. (Dkt. #4 (assuming jurisdiction and enjoining the Government from transferring Petitioner for the time being)).  The Government concedes that Petitioner's "previous period of detention under Section 1225(b)(2)(A) constitutes a due process violation that merits a remedy," and argues that "the appropriate remedy here is a burden-shifted bond hearing before an immigration judge, rather than outright release."  (Gov't Opp. 2).  The Court agrees with the Government and accordingly denies Petitioner's third, fourth, and fifth requests (including his request for immediate release), except that it finds a Fifth Amendment Due Process violation and grants his request in the alternative for a burden-shifted bond hearing.

3

The Court reaches this conclusion by applying the standard that has accreted in this District in recent months.  Where, as here, ICE makes an arrest and detention pursuant to Section 1225(b)(2)(A) but then, after *da Cunha*, retroactively asserts that the detention is pursuant to Section 1226(a), in order for the detention to be legal and in compliance with Section 1226(a), ICE must: (i) have made an initial determination as to eligibility for release (which determination a court can find ICE has made where the detention decision was discretionary — that is, based on the petitioner's individualized circumstances) and (ii) have provided the opportunity for a bond hearing upon detention.  Failure to comply with (ii), at least where the petitioner is detained because of an indication of danger to the community (*i.e.*, pending criminal charges or evidence of terrorist or gang affiliation), can be rectified not only by immediate release, but also by a bond hearing where the Government bears the burden of proving, by clear and convincing evidence, that the petitioner is a danger to the community or flight risk.  In other words, in such a circumstance, the Court has discretion to order a burden-shifted bond hearing rather than immediate release.  *See, e.g., Rivas Reyes* v. *Mullin*, No. 26 Civ. 4334 (PAE), 2026 WL 1707170, at *2 (S.D.N.Y. June 12, 2026); *Perez Guedez* v. *Catletti*, No. 26 Civ. 2463 (JLR), 2026 WL 962575, at *2 (S.D.N.Y. Apr. 9, 2026); *Sharifzoda* v. *Orange Cnty. Jail*, No. 26 Civ. 2486 (KMK), 2026 WL 851378, at *1-*2 (S.D.N.Y. Mar. 27, 2026); *see also Jimenez* v. *Joyce*, No. 26 Civ. 429 (AS), 2026 WL 251889, at *1 (S.D.N.Y. Jan. 30, 2026); *Li* v. *Noem*, No. 26 Civ. 989 (JAV), 2026 WL 366849, at *1 (S.D.N.Y. Feb. 10, 2026); *Guachambala* v. *Lyons*,

4

No. 26 Civ. 1835 (GBD), 2026 WL 686154, at *2 (S.D.N.Y. Mar. 10, 2026); *Gomez-Ramirez* v. *Noem*, No. 26 Civ. 1860 (JPO), 2026 WL 734945, at *2 (S.D.N.Y. Mar. 16, 2026).

The focus of the hearing that the Court held on July 28, 2026, was whether ICE had provided sufficient evidence that it had made an individualized assessment as to Petitioner's eligibility for release at the time of his detention. The Court finds that it did. Indeed, with respect to Section 1226(a)'s first requirement, that is all the Court need find; the question of whether the conclusion ICE reached after making its assessment was correct is a question reserved for the bond hearing.

The particular facts that ICE considered in making its individualized assessment begin with New York State Troopers encountering Petitioner on April 3, 2026, because his vehicle had become disabled on the roadway. (Valdez Decl. ¶ 8). Though the Troopers did not detain Petitioner at that time, they eventually communicated to ICE (whose officers also confirmed for themselves) that Petitioner was unlawfully present in the United States and was wanted in El Salvador for his alleged involvement in homicide and narcotics trafficking and MS-13 membership. (*Id.* ¶¶ 8-11). In view of the Red Notice against Petitioner and the accusations of homicide, narcotics trafficking, and MS-13 membership alleged therein, ICE issued a Form I-200 warrant for Petitioner's arrest and detained him. (*Id.* ¶¶ 11-12; Gov't Opp. 2 (citing Dkt. #9-5, 9-3)). The Court finds that these considerations satisfy Section 1226(a)'s requirement of an individualized assessment. The Court has carefully

considered Petitioner's arguments to the contrary but ultimately finds them less persuasive.  In particular, Petitioner's arguments about the propriety of relying on allegations contained in a Red Notice, and whether ICE contravened its own internal policy by doing so (*e.g.,* Dkt. #15 at 1-2), are forceful arguments worthy of an Immigration Judge's attention, but for this Court's purposes, they suffice to demonstrate an individualized assessment under Section 1226(a).

Having determined that ICE satisfied the first requirement for detention under Section 1226(a), the Court turns to the second requirement.  The Government concedes that Petitioner was not provided the opportunity for a bond hearing upon his detention.  But in light of Petitioner's potential danger to the community — specifically, his potential affiliation with MS-13 and allegations of homicide and narcotics trafficking — the Court declines to order Petitioner's immediate release and instead exercises its discretion to order that Petitioner be provided a burden-shifted bond hearing.  In particular, **within fourteen days of this Order**, an Immigration Judge shall hold a bond hearing for Petitioner where the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or flight risk.  In determining whether to grant bond, the Immigration Judge shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring.  In determining the amount of any bond imposed, the Immigration Judge shall consider Petitioner's ability to pay.  Within 72 hours of the bond hearing, the

Government shall file a letter on the docket of this case stating the outcome of the bond hearing. It shall also promptly order a transcript or recording of the hearing and file such on the docket. *See Rivas Reyes*, 2026 WL 1707170, at *5 (ordering same).

This case shall remain open until further Order of the Court.

SO ORDERED.

Dated:   August 11, 2026
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

7